ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

NOAH STERN (CABN 297476)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6758
    Fax: (415) 436-7234
    Email: Noah.Stern@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ALEX DAVID CUEVAS-AGUILAR,<br><br>    Defendant. | CASE NO. CR 23-00362 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Date:  October 26, 2023<br>Time:  10:00 a.m.<br>Court:  Hon. Charles R. Breyer |

## I.  OVERVIEW

The United States and the defendant, Alex David Cuevas-Aguilar, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited

prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.  For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—accounting for the time served in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II.     MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b).  The government respectfully submits that the record here—the Criminal Complaint, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report.  The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

   a.   Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8):                                          24
        Defendant possessed between 100 KG and 400 KG converted drug weight

   b.   Acceptance of Responsibility, U.S.S.G. §3E1.1:                                              - 3

   c.   Adjusted Offense Level:                                                                     21

The government calculates a Criminal History Category of I (0 points).[1]

---

[1] The government has reviewed and produced in discovery the criminal history report for the defendant from a criminal records database.  That report reflects that the defendant does not have any

An Adjusted Offense Level of 21 and a Criminal History Category of I results in a Guidelines range of 37 to 46 months.

The government also seeks a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

### IV. SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one day, and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

**A.    Section 3553 Factors**

1. ***Nature and circumstances of the offense and history and characteristics of the defendant***

The defendant is a 23-year-old man who was born in Honduras. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. According to Mr. Cuevas-Aguilar's criminal history report, he was arrested in 2017 for being present in the United States illegally. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following her release from the custody of the U.S. Marshals. To the government's knowledge, the defendant has no prior criminal convictions, placing him in Criminal History Category I. Mr. Cuevas-Aguilar, however, has several prior arrests for drug-trafficking activity in the Tenderloin.[2]

On September 1, 2023, at around 4:00 p.m., law enforcement conducting concealed surveillance observed the defendant standing in front of 315 Hyde Street in San Francisco, California. Law enforcement observed a man approach the defendant and hand him U.S. currency. The defendant then

---

prior criminal convictions.

[2] According to police reports, on August 18, 2022, Mr. Cuevas-Aguilar sold methamphetamine to an undercover officer, was arrested, and suspected fentanyl, methamphetamine, cocaine base, and heroin were found on his person. On February 24, 2023, officers observed Mr. Cuevas-Aguilar conduct a hand-to-hand transaction, arrested him, and found suspected cocaine base and marijuana on his person.

took a plastic baggie containing a white substance out of his hoodie pocket and handed a piece of the white substance to the man. Law enforcement arrested the defendant and searched his person incident to arrest. The defendant possessed 18.6 grams gross of a fentanyl analogue--commonly known as China White—in multiple small press-lock baggies, 13.7 grams gross of heroin in multiple press-lock baggies, 11.1 grams gross of cocaine in multiple press-lock baggies, and 19.9 grams gross of cocaine base in a clear plastic bag. He possessed all of these substances with the intent to distribute them to other people. The defendant also possessed $71 of U.S. currency and an Android cellphone.

After his arrest, the defendant agreed to remain in custody during the pendency of this case. He was arraigned on an information alleging possession with the intent to distribute fentanyl analogue. In the Plea Agreement, the defendant acknowledges that he knew the substances in his possession were fentanyl analogue, heroin, cocaine, and cocaine base and that he possessed theses substances intending to distribute them to other individuals. He admits to possessing fentanyl analogue in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that [she] will be removed or deported from the United States." Plea Agreement, ¶ 1.

> 2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

The defendant has no criminal history. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward

variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

In order for the defendant to receive this plea offer, the defendant waived detention and has been in continuous custody since arrest; the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within weeks of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin.  The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition results in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin.  The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

### B.  The necessity of the proposed supervised release special conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition.  In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.  The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

The government also requests that the Court order forfeiture of the cash and cellphone listed in the plea agreement, both of which were involved in the defendant's offense.

### V.   CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years with the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition, and order forfeiture of the cash and cellphone.

DATED: October 20, 2023                                                  Respectfully Submitted,

                                                                                              ISMAIL J. RAMSEY
                                                                                              United States Attorney


                                                                                               */s/ Noah Stern*
                                                                                              NOAH STERN
                                                                                              Assistant United States Attorney